IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUANITA NELSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.  3:04-cv-267-DGW |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter is before the Court pursuant to Local Rule 9.1, D.S.IL, regarding the disposition of Social Security cases in this District.  Juanita Nelson ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended 42 U.S.C. 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.  For the reasons set forth below, the final decision of the Commissioner of Social Security denying benefits is **AFFIRMED** and Judgment is **GRANTED** in favor of Defendant and against the Plaintiff.  The case is **DISMISSED** with prejudice.

**BACKGROUND**

**Administrative Proceedings**

Plaintiff filed an application for Supplemental Security Income (SSI) on December 11, 1999 (Tr. 254-255). The claim was denied initially and on reconsideration (Tr. 225-228; 231-233). By decision dated August 5, 1998, an Administrative Law Judge found Plaintiff capable of performing her past relevant work and denied benefits (Tr. 213-223).  The Appeals Council

1

remanded, ordering the ALJ to give further consideration to Plaintiff's medical conditions (Tr. 246-248).  By decision dated December 18, 2001, a different ALJ found Plaintiff capable of past relevant work and again denied benefits.  Plaintiff requested review by the Appeals Council (Tr. 17).  That request was granted by letter dated June 25, 2003 (Tr. 15).  Plaintiff filed her Memorandum in Support of Review on July 16, 2003.  The Appeals Council denied review on October 17, 2003 (Tr. 12).  On March 25, 2004, the Appeals Council extended the time within which Plaintiff might file the instant action (Tr. 11). On April 20, 2004, pursuant to 42 U.S.C. § 405(g),  the Plaintiff commenced a civil action for judicial review of the ALJ's decision.

**Statement of Facts**

Plaintiff was 28 years of age when the ALJ issued his decision (Tr. 30, 56).  She is a high school graduate with two years of college (Tr. 66).  From October 2000 until March 2001 she worked twelve-hour shifts on a production line at Proctor and Gamble (Tr. 718-19).  Plaintiff testified that she was fired because she "missed too many days" (Tr. 720).  Plaintiff subsequently worked in claims intake for State Farm from April to July 2001 (Id.).  She was fired due to frequent absences (Tr. 720-21).  Plaintiff testified that she could not work because she had severe cramping pains, could not stand on her feet for an extended period of time, experienced bleeding, and was depressed (Tr. 721-22). She also reported frequent bowel movements, nausea, and migraines (Tr. 722-24).  She took Tylenol 3 with codeine, Imitrex, and Imodium, but she did not take antidepressant medication (Tr. 721-22, 729).  She testified that she did nothing but sit at home watching television (Tr. 729).

Plaintiff seeks SSI benefits commencing January 1, 1996, due to disability resulting from ulcerative colitis (Tr. 261). She also admitted to depression with thoughts of suicide (Tr. 531).

2

In February 1993, Plaintiff first was treated for symptoms of ulcerative colitis (Tr. 674). Symptoms persisted through August and September 1993 when she was first diagnosed with ulcerative colitis (Tr. 597-598; 671-672). Symptoms were still hard to control in February 1994 (Tr. 668). Prednisone treatment put Plaintiff in near remission (Tr. 665). She was hospitalized for four days during September 1995 due to abdominal cramping, intermittent vomiting, and worsening diarrhea with five to six bloody stools a day (Tr. 653). By January 1996, Plaintiff's condition worsened (Tr. 657). Rectal bleeding did subside but diarrhea episodes had increased from previous episodes of four daily to five daily (Tr. 652, 656).

In February 1996, Plaintiff underwent a total abdominal colectomy (Tr. 622). She was admitted February 28 and discharged on March 7, 1996 (Tr. 619). She was readmitted March 13-16, 1996 due to complications around the stoma (Tr. 609). She was readmitted for two days during April 1996 due to abdominal pain, dizziness and headache. She was found to be dehydrated (Tr. 100-101).

In June 1996, she underwent iliostomy closure (Tr. 152, 159). In October 1996, Plaintiff had a enterocysis (barium examination of the small bowel) which was indicative of a partial bowel obstruction (Tr. 337, 343). In December 1996, she was still complaining of diarrhea with episodes of 20 per day (Tr. 158). In March 1997, Plaintiff still reported about 20 bowel movements per day with inability to control the bowel movements at times (Tr. 365). In June 1997, Plaintiff still demonstrated symptoms of intermittent bowel obstruction and at other times had up to 20 bowel movements per day (Tr. 383-384). The June 1997 obstruction was thought to be caused by the ileal pouch tipping over and causing the blockage (Tr. 117). Catheterization was recommended, but Plaintiff would not use it (Id.). The pouch was surgically revised in

October 1999, with closure of the ileostomy in January 2000 (Tr.150, 152).

Dr. J.M. Drickey, performed a consultative psychological examination of Plaintiff in March 1996.  Upon examination, Plaintiff adequately answered all questions asked (Tr. 379-80).  Dr. Drickey indicated that Plaintiff's understanding and memory were adequate, but that she was unable to concentrate and persist on task due to pain, she had limited social contacts, and she had poor adaptive and coping abilities (Tr. 380).  He opined that Plaintiff had a mood disorder (irritability due to pain) and assigned her a Global Assessment of Functioning (GAF) score of 40 (indicative of some impairment in reality testing or communication or major impairment in several areas) (Tr. 381).  He suggested counseling, therapy, a pain clinic, and further testing (Id.).

Dr. T.J. Glenn, board certified in psychiatry and family practice, performed a consultative examination of Plaintiff in March 1997. She reported social difficulties (Tr. 366).  However, she visited her sister, did household chores, watched television, read, and helped at her mother's restaurant (Tr. 366). Dr. Glenn diagnosed no mental impairments, but noted Plaintiff's history of gastrointestinal problems (Tr. 369).

Dr. Drickey again evaluated Plaintiff during October 2000.  The diagnosis this time was some depressive symptoms, social phobia, and possible personality disorder.  Her GAF was estimated at 55 following this session (Tr. 418-420). Plaintiff was sent to Dr. Drickey a third time for evaluation during May 2001.  He administered standardized tests. The intelligence test and the depression test results were valid but the MMPI-2 results were invalid (Tr. 422).  Dr. Drickey diagnosed severe depression and assigned a GAF of 55 (Tr. 423). He further indicated an extreme restriction in Plaintiff's ability to respond appropriately to work pressures in a usual

work situation (Tr. 426).  His summary was "Severe depression as registered on the Beck Depression Inventory" ("BDI") and he recommended that she stay on her medications (she was taking no psychotropic medications) (Id.).  Dr. Dickey did not note that, unlike the MMPI, the BDI lacks validity scales; he also did not note that a BDI score of 44 is so extreme as to raise the question of exaggeration of symptoms. See Groth-Marnat, Handbook of Psychological Assessment 124-26 (3d ed. 1997).

     Psychologist Dennis Anderson, testified as Medical Expert ("ME")  at the August 2001 hearing.  He testified that in his opinion,  Dr. Drickey's narrative report did not support his assessment of extreme problems with concentration and depression  (T 736).  The ME opined that the record supported a diagnosis of a mood disorder due to medical condition with anxiety and depressive features (Tr. 734).  He opined that Plaintiff had: mild restriction of her daily activities; moderate difficulty in social functioning; moderate deficiencies of concentration, persistence, or pace; and, no episodes of deterioration or decompensation in a work-like setting (Tr. 734-35).  The ME further opined that Plaintiff had slight limitation in her ability to understand, remember, and carry out short, simple instructions; slight limitation in making simple work-related decisions; moderate limitation in her ability to understand, remember, and carry out detailed instructions; moderate limitation in interacting appropriately with the public on an infrequent basis, but marked limitation if it were on a constant basis; slight limitation in relating to an understanding supervisor and moderate limitation in relating to a harsh and demanding supervisor; slight limitation in dealing with co-workers, increased to moderate limitation if the contact was more constant; moderate limitation in responding to work pressures; and, slight limitation in dealing with changes to work setting (Tr. 735-36).  The ME indicated

5

that Dr. Drickey's narrative did not support the marked and extreme limitations suggested in his medical source statement (Tr. 425-26; Tr. 736).  At this point in the hearing, the ALJ asked Plaintiff whether she had told Dr. Drickey about her work activity at Proctor & Gamble; Plaintiff indicated she had not told him because he had not asked her about it (Tr. 737-38).

Dr. John Grenfell, testified as Vocational Expert ("VE")  at the August 2001 hearing. The VE opined that Plaintiff had no significant work experience (Tr. 738).  He identified a number of jobs that would allow reasonable access to restroom facilities, but indicated that "[i]f she has to miss two or three days a week, or if she has to go to the bathroom, say, once a week or once every two weeks, I would say she would not be retained in any employment" (Tr. 738-40).

## DISCUSSION

**The ALJ's Decision**

The ALJ found that Plaintiff had engaged in substantial gainful activity during the period between October 2000 and March 2001, after her alleged onset of disability (Tr. 29).  The ALJ further found that Plaintiff had Crohn's disease and a mood disorder related to that general medical condition, but that she did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings) (Tr. 25-26, 29).  The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to:

> Lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand and walk for extended periods. She should only occasionally balance, stoop and crouch. The claimant would need to have easy access to a bathroom. Her mental impairment would impose moderate limitation in the following work areas: understanding and remembering detailed instructions, carrying out detailed instructions, interacting appropriately with members of the public, and responding appropriately to work pressure.  The claimant would have slight to

>>moderate limitation in her ability to interact appropriately with co-workers and supervisors. (Tr. 29).

The ALJ concluded that Plaintiff could perform her past relevant work as a factory worker despite the limitations caused by her impairments (Tr. 28-29). Accordingly, the ALJ found that Plaintiff was not disabled and denied her applications SSI (Tr. 28-30).

**Legal Standard**

To receive disability benefits or supplemental security income, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job. Id.

Under the Social Security Act, a court must sustain the Commissioner's findings if they

are supported by substantial evidence.  42 U.S.C. § 405(g)  Substantial evidence is "more than a mere scintilla" of proof.  The standard is satisfied by "such  relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Butera v. Apfel, 173 F.3d 1049, 1055 (7th Cir. 1999)  In addition, the ALJ must build a bridge of logic connecting the evidence to the conclusions that support the decision. Groves v. Apfel, 148 F.3d 809,  811 (7th Cir. 1998)  Because the Commissioner is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner.  Id.  However, this Court does not defer to conclusions of law, and if the Commissioner makes an error of law or serious mistakes, reversal is required unless this Court is satisfied that no reasonable trier of fact could have come to a different conclusion.  Sarchet v. Chater, 78 F.3d 305, 309 (7th Cir. 1996)

**The Plaintiff's Condition Does Not Meet Listing  5.06D[1]**

The Plaintiff argues correctly that at step three of the sequential evaluation process, a person will be granted benefits if their condition meets or equals one of the listings. 20 CFR §404.1520(a)(4)(iii).  Plaintiff argues that the ALJ erred in finding that her condition did not meet Listing 5.06D.  Plaintiff argues that Listing 5.06D requires a recurrence of, among other things, intermittent obstruction after a total colectomy. 20 CFR Pt. 404, Subpt. P, App.1, 5.06.

However, more specifically Listing 5.06 allows for a presumption of disability for claimants who demonstrate:

---

[1] Plaintiff only argues that her condition meets Listing 5:06D and does not argue that it equals the listing.

> *Chronic ulcerative or granulomatous colitis (demonstrated by endoscopy, barium enema, biopsy, or operative findings).* With:
>
> A. Recurrent bloody stools documented on repeated examinations and anemia manifested by hematocrit of 30 percent or less on repeated examinations; or
>
> B. Persistent or recurrent systemic manifestations, such as arthritis, iritis, fever, or liver dysfunction, not attributable to other causes; or
>
> C. Intermittent obstruction due to intractable abscess, fistula formation, or stenosis; or
>
> D. Recurrence of findings of A, B, or C above after total colectomy; or
>
> E. Weight loss as described under §5.08.

The record in this case clearly indicates that during February 1996, Plaintiff had the surgery required Listing 5.06D, to wit: a total colectomy. (Tr. 622). Further, she had partial bowel obstruction during October 1996 and June 1997 which is also a requisite under the listing (Tr. 117). However, these are not the only requirements of Listing 5.06D. To meet Listing 5.06D via the intermittent obstruction set forth in 5.06C, Plaintiff is required to show that the obstruction is due to one or more of three identified conditions: intractable abscess (collection of pus as a result of infection), fistula formation (abnormal passage), or stenosis (narrowing). Plaintiff has not acknowledged this specific requirement, or pointed to any evidence suggesting her condition satisfies it. The medical reports relating to the two obstruction episodes Plaintiff cites do not document intractable abscess, fistula formation, or stenosis. More specifically, the October 1996 report specifically states that narrowing, i.e., stenosis, is not identified in the small bowel (Tr. 343), and the June 1997 report attributes the obstruction to the ileal pouch having "tipped over" (Tr. 117), not intractable abscess, fistula formation, or stenosis as required in the

listing.  Thus Plaintiff has not shown that her condition meets Listing 5.06D.  See  Maggard v. Apfel, 167 F.3d 376, 379 (7th Cir. 1999) (To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment. The claimant bears the burden of proving his condition meets or equals a listed impairment. (citations omitted)).

Additionally, Plaintiff argues that although the ALJ acknowledged the October 1996 obstruction, he ignored the June 1997 obstruction in his opinion.  She argues that in determining whether a plaintiff's conditions meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing.  Brindisi ex rel Brindisi v. Barnhart, 315 F.3d 785, 786 (7th Cir. 2003).  The Court is not persuaded.  Discussion by the ALJ of the June 1997 obstruction would have been irrelevant, and indeed any error would be harmless in the inquiry at bar, because Plaintiff has not carried her burden of proof with respect to specific requirements of the listing.  See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")

**Plaintiff Has Failed to Demonstrate That She Could Not Perform Her past Relevant Work Despite Her Need for Restroom Acces**s

Plaintiff next argues that the ALJ erred in determining that she could perform her past relevant work (Step 4) despite her need for frequent bathroom breaks.  In support of this argument, Plaintiff cites her own testimony of consistent episodes of diarrhea occurring from five to 20 times per day. (Plaintiff's Brief at 6-7).  She argues that this is expected in one who suffers from ulcerative colitis**.**  See THE MERCK  MANUAL OF DIAGNOSIS AND THERAPY, (834, 16th ed. 1992).  Plaintiff argues that the ALJ mischaracterized her problem as  "reasonable access to the bathroom" when he should have characterized it as a " frequency of need to use the

10

facility."

To support her argument Plaintiff cites her testimony before the ALJ. She stated that the manager of her place of employment confirmed that she " . . . was always running back and forth to the restroom with the condition of her stomach" (Tr. 319). She argues that she has lost whatever employment she has attempted due to this problem (Tr. 706, 719-721). She further argues that because of the frequency of her diarrhea the conclusion must be that she would have to go to the bathroom while on the job in excess of the allowable rate testified to by the vocational expert.[2] She argues that because her employers and her physician verified her episodes of frequent diarrhea that employment is precluded. (Tr. 712, 740). The Court is not swayed by this argument.

Claimants for social security disability benefits have the burden of proof to establish inability to return to past relevant work. Noel v. Sullivan, 916 F.2d 715 (7th Cir.1990); Halvorsen v. Heckler, 743 F.2d 1221,1225 (7th Cir. 1984). However, as the ALJ found, Plaintiff failed to provide any evidence to show that her restroom usage requirements prevented her from performing her past relevant work. The ALJ noted that for approximately six months she performed the job of a factory worker at Proctor and Gamble, working twelve-hour shifts (Tr. 718-19). She claimed that she was fired due to absences caused by her gastrointestinal impairment (Tr. 720), but she failed to provide any documentation to support her claim.[3] The ALJ offered to allow her counsel to provide additional evidence regarding the reasons her

---

[2]The vocational expert testified that several occupations provide reasonable access to a facility (Tr. 739). He also testified, however, that if claimant has to go to the bathroom once a week or once every two weeks she would not be retained (Tr. 746).

[3]Her only proof was her testimony which the ALJ found to be not totally credible.

employment was terminated, or to obtain the ALJ's assistance in obtaining such information if he was unable to do so (Tr. 743). Plaintiff counsel did not provide the requested information. The Court must therefore assume that she was not terminated for excessive restroom usage. Plaintiff bore the burden of proving she could not do her past relevant work.  The fact that she performed the job of factory worker for about six months despite the limitations caused by her impairments provides substantial evidence supporting the ALJ's conclusion that she could return to that work on a regular full-time basis.

**Depression**

Lastly, Plaintiff argues that the ALJ erred because he accorded greater weight to the testimony of the Medical Examiner, Dr. Anderson than he did to Plaintiff's treating psychologist, Dr. Drickey.  She argues that Dr. Drickey's opinions have higher value than Dr. Anderson's because he (Drickey) actually examined Plaintiff and Dr. Anderson only reviewed the record.[4] The Plaintiff argues that Dr. Anderson's opinion is not supported by the valid test results.  She points to her score on the BDI which was 44 and she notes that the range for severe depression is 30-63 (T 422).

In addition, she argues that the ALJ attempted to bolster Dr. Anderson's opinion with that of the non-examining state agency consultant Mary Helen McGreevy (Tr. 27).  Plaintiff argues that the ALJ's decision was flawed because it mistakenly stated that the state consultant (McGreevy) based her opinion on the last examination by Dr. Drickey (Tr. 27).[5]  This Plaintiff

---

[4] Dr. Drickey examined Plaintiff on three separate occasions.  The examinations included standardized tests.  Dr. Drickey concluded that Plaintiff was precluded from employment. (T.380,419, 422, 426).

[5] McGreevy completed her evaluation December 9, 2000 (T 189).  The last Drickey report was based on a May 15, 2001, assessment (T 421).

argues that more weight should be given to the opinion of a source who has examined an individual than to the opinion of a non-examining source. 20 CFR §404.1526(d)(1).  The Court is not swayed by this argument.

The ALJ accorded great weight to the opinion of the ME and found Dr. Drickey's opinion was entitled to little weight (Tr. 25, 28).  The weighing of conflicting medical evidence is reserved to the ALJ as finder of fact, and his properly articulated and reasonable assessment of the evidence in this case should not be disturbed. See Schoenfeld v. Apfel, 237 F.3d 788, 793 (7th Cir. 2001) ("[W]here conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the responsibility for that decision rests with the Commissioner."); Richardson v. Perales, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

While Plaintiff argues that the ALJ erred in finding that the underlying evidence, including his narrative report, did not support Dr. Drickey's conclusions, she points only to the results of the BDI, which showed an extreme level of depression (Tr. 422; Plaintiff's Brief at 7-8).  The BDI is a five or ten minute self-completed survey lacking in any validity scale component. A score of above 40, such as Plaintiff's score of 44, is "[s]ignificantly above even severely depressed persons, suggesting possible exaggeration of depression…" GARY GROTH-MARNAT, HANDBOOK OF PSYCHOLOGICAL ASSESSMENT 124-26 (3d ed. 1997).  Notably, Dr. Drickey reported that Plaintiff's responses to the MMPI-2, which include several validity scales, were invalid because Plaintiff "answered an unusually large number of extreme items in the deviant direction; an indiscriminate and exaggerated response pattern is probable." (Tr. 422).

Thus, the results of clinical testing fail to prove Plaintiff has the marked and extreme limitations suggested by Dr. Drickey, and this renders Dr. Drickey's reliance on Plaintiff to describe her memory and concentration abilities questionable at best (Tr. 422-23).

Additionally, Dr. Drickey's suggestion that Plaintiff had marked and extreme mental limitations is inconsistent with her lack of therapy, treatment, or medication, and her six months of recent work history. Indeed, Plaintiff testified that she left Dr. Drickey unaware of this significant work history because he had not asked her about it (Tr. 737-38). The ALJ reasonably accorded greater weight to the ME's opinion because it was consistent with the record as a whole, while Dr. Drickey's opinion was uninformed with regard to Plaintiff's work activities and inconsistent with Plaintiff's treatment history and his own clinical observations.

What remains is Plaintiff's argument about the report of the non-examining state agency consultant, Mary Helen McGreevy, and the ALJ's reliance upon it. The record is clear that McGreevy's evaluation of the Plaintiff is dated December 9, 2000. It is also clear that Dr. Drickey examined Plaintiff three times and completed multiple reports. The last report being dated May 15, 2001, therefore McGreevy could not have relied on Drickey's May 2001 evaluation when she completed her evaluation in December 2000. Therefore, it is clear that McGreevy relied on the October 19, 2000 evaluation of the Plaintiff in formulating her opinion. Drickey's October 2000 evaluation and his May 2001 evaluation are similar in all respects except the May 2001 evaluation found the Plaintiff's BDI score to be 44. For the reasons stated above the Court is not persuaded that the ALJ erred in failing to place much reliance on that BDI score. Therefore, the Court finds that any error by the ALJ in relying on McGreevy's evaluation is harmless.

14

**CONCLUSION**

For the reasons stated above, the Commissioner's final decision denying Juanita Nelson's application for Disability Benefits and Supplemental Security Income is **AFFIRMED** and Judgment is **GRANTED** in favor of the Defendant and against the Plaintiff.  The case is **DISMISSED** with prejudice.

**Dated: September 23, 2005**

                                            s/Donald G. Wilkerson
                                            **DONALD G. WILKERSON**
                                            **UNITED STATES MAGISTRATE JUDGE**